# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *for the Western District of New York*

**April 2026 GRAND JURY**
**(Impaneled April 27, 2026)**

**THE UNITED STATES OF AMERICA**

***-vs-***

**MIRZA KHAN and TALIB HUSSAIN**

**INDICTMENT**

**Violations:**

Title 18, United States Code, Sections, 1349, 1029(a)(2), (b)(2), and (c)(1)(A)(i), 1029(a)(3) and (c)(1)(A)(i), 1028A, and 2
(19 Counts and Forfeiture Allegation)

## BACKGROUND

**The Grand Jury Charges That:**

At all times relevant to this Indictment:

### *DEFENDANTS, AND THEIR BUSINESSES AND PROPERTIES INVOLVED*

1. Mirza KHAN was a resident of the Western District of New York.

2. Talib HUSSAIN was a resident of the Western District of New York.

3. 1060 Norton Street (hereinafter "Property 1") was a commercial property located in the City of Rochester, in the Western District of New York. Beginning on or about May 19, 2015, through and including the date of this Indictment, KHAN owned Property 1.

4. Lucky Beverage Wholesale Inc. was a wholesaler that supplied convenience stores with food and beverages, tobacco, health and beauty products, and general

merchandise. Lucky Beverage Wholesale was located at Property 1. On or about April 8, 2015, HUSSAIN incorporated Lucky Beverage Wholesale Inc.

5. 989 Chili Avenue (hereinafter "Property 2") was a commercial property in Rochester, New York. Beginning on or about July 8, 2011, through and including the date of this Indictment, MK Enterprises, Inc., owned Property 2. KHAN was the President of MK Enterprises.

6. Chili Express Mart Inc. (formerly Chili Express, Inc.), was a convenience store located at Property 2. HUSSAIN was the President of Chili Express.

7. 684-700 S. Plymouth Ave (hereinafter "Property 3") was a commercial property located in Rochester, New York. Beginning on or about July 23, 2002, through and including the date of this Indictment, HUSSAIN owned Property 3.

8. Easy Food Market (a/k/a EZ Food) was a convenience store located at Property 3.

9. KHAN and HUSSAIN resided at a particular residence in Pittsford, New York (hereinafter "Property 4").

10. The following entities (hereinafter, collectively the "Financial Institutions") were financial institutions, as defined by Title 18, United States Code, Section 20: American Express National Bank ("American Express"), Bank of America, National Association ("Bank of America"), Barclays Bank Delaware ("Barclays"), Capital One, National Association ("Capital One"), JPMorgan Chase Bank, National Association ("Chase"), Citibank, National Association ("Citi"), Comenity Bank ("Comenity"), Discover Bank

("Discover"), First National Bank of Omaha, GE Capital, Security Bank, Synchrony Bank (formerly known as GE Capital) ("Synchrony"), and U.S. Bank, National Association ("US Bank").

***BACKGROUND REGARDING "SYNTHETIC IDENTITY" FRAUD SCHEMES***

11. In a synthetic identity fraud scheme, bad actors find genuine social security numbers ("SSNs"), use them to apply for credit and debit cards (hereinafter "synthetic cards") without the knowledge or permission of the true owners of the SSNs, incur the maximum debt amount allowed on each fraudulently obtained card, and then never pay the balance.

12. Bad actors generally target SSNs issued to children and elderly individuals, because these groups tend to utilize and monitor their credit less frequently.

13. Once the bad actors identify genuine SSNs, they create "synthetic identities." A synthetic identity consists of a genuine, stolen SSN, a fictitious name, and a residential address that is either owned or controlled by the bad actors (known as a "drop address").

14. The bad actors then use these synthetic identities to apply for credit and debit cards at the Financial Institutions.

15. When bad actors use synthetic identities to apply for credit and debit cards, they are committing fraud because they are using stolen SSNs and fictitious names.

16. However, because the bad actors use genuine, stolen SSNs, the Financial Institutions are often unable to detect the fraud. Instead, the Financial Institutions approve the card applications and unwittingly issue "synthetic cards" to the bad actors.

17. The Financial Institutions then mail the synthetic cards to the "drop addresses" designated by the bad actors in the applications.

18. Once the bad actors receive synthetic cards, they "max out" the synthetic cards in what is known as a "bust out" scheme.

19. The bad actors make multiple large purchases to obtain the maximum credit available on the synthetic cards.

20. Then, the bad actors purport to pay off the balances of the synthetic cards using bad checks.

21. As soon as the Financial Institutions receive the bad checks (and before the bad checks have time to bounce), the Financial Institutions credit the payments to the synthetic cards and reset the cards' credit limits.

22. The bad actors immediately make additional large purchases in order to max out the synthetic cards a second time.

23. Bad actors can repeat this process multiple times using the same synthetic cards before the Financial Institutions realize that they are being defrauded and place holds on the synthetic cards.

24. Once the Financial Institutions place holds on the synthetic cards, the bad actors abandon them. This results in losses to the Financial Institutions. This also damages the credit ratings of the true owners of the SSNs that were used to create synthetic identities and then obtain synthetic cards.

**COUNT 1**
**(Conspiracy to Commit Mail Fraud and Bank Fraud)**

**The Grand Jury Charges That:**

25. The allegations of the Introduction are realleged and incorporated herein.

26. Beginning in or before 2012 through and including on or about July 23, 2024, in the Western District of New York, and elsewhere, the defendants, MIRZA KHAN and TALIB HUSSAIN, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Sections 1341 and 1344.

**OBJECT OF THE CONSPIRACY**

27. It was the object of the conspiracy for the defendants, MIRZA KHAN and TALIB HUSSAIN, and others to:

a. devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises and for the purposes of executing such scheme and artifice did caused to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier, and took and received therefrom, any such matter and thing, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter and

thing, and as a result of such scheme and artifice, affected financial institutions, in violation of Title 18, United State Code, Section 1341; and

b. execute a scheme and artifice to defraud financial institutions and to obtain money, funds, credits, assets, securities, and other property owned by, and under the custody and control of financial institutions by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

**OVERT ACTS**

28. In furtherance of the conspiracy and to affect the illegal objects thereof, the defendants, MIRZA KHAN and TALIB HUSSAIN, and others committed the following overt acts in the Western District of New York and elsewhere:

a. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators obtained valid social security numbers that belonged to real people (hereinafter the "victims").

b. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used the victims' social security numbers to create synthetic identities.

c. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used these synthetic identities to submit applications, *via* the Internet, to the Financial Institutions for credit and debit cards.

d. KHAN and HUSSAIN used victims' social security numbers to submit approximately 1,035 card applications to the Financial Institutions *via* the Internet from their residence at Property 4.

e. KHAN and HUSSAIN used victims' social security numbers to submit approximately 37 card applications to the Financial Institutions *via* the Internet from their business, Chili Express Mart Inc., at Property 2.

f. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators rented apartments in the Western District of New York and used them as drop addresses. The drop addresses included multiple apartments at 95 Fort Hill Terrace, 3240 South Winton Road, 241 Culver Road, and other apartment complexes in and around Rochester, New York.

g. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators listed the drop addresses as the mailing addresses for synthetic cards and thereby caused the Financial Institutions to mail the synthetic cards to those addresses.

h. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators went to the drop addresses to collect the synthetic cards and other mailings from the Financial Institutions related to the synthetic cards.

i. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used synthetic cards to make purchases at retail stores. This included purchases at Apple, BJs, and Sam's Club.

j. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used synthetic cards to make purchases at their own businesses, including Lucky Beverage, Chili Express Mart, and Easy Food Market.

k. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used synthetic cards to pay the property taxes to the City of Rochester for Property 1, Property 2, and Property 3.

l. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used fraudulent checks to make payments towards the balances of the synthetic cards in order to temporarily increase the synthetic cards' spending limits.

m. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators ultimately did not pay the full balance owed on the synthetic cards, causing losses to the Financial Institutions and damage to the victims' credit ratings.

**All in violation of Title 18, United States Code, Section 1349.**

**<u>COUNT 2</u>**
**(Conspiracy to Commit Access Device Fraud)**

**The Grand Jury Further Charges That:**

29. The allegations of the Introduction and Count 1 are realleged and incorporated herein.

30. Beginning in or before 2012 through and including on or about July 23, 2024, in the Western District of New York, and elsewhere, the defendants, MIRZA KHAN and TALIB HUSSAIN, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, 1029(a)(2).

**OBJECT OF THE CONSPIRACY**

31. It was the object of the conspiracy for the defendants, MIRZA KHAN and TALIB HUSSAIN, and others to knowingly and with intent to defraud traffic in and use one or more unauthorized access devices, and by such conduct obtain anything of value aggregating $1,000 or more during a one-year period, in violation of Title 18, United States Code, Section 1029(a)(2).

**OVERT ACTS**

32. In furtherance of the conspiracy and to affect the illegal objects thereof, the defendants, MIRZA KHAN and TALIB HUSSAIN, and others committed the following overt acts in the Western District of New York and elsewhere:

a. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators obtained valid social security numbers that belonged to real people (hereinafter the "victims").

b. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used the victims' social security numbers to create synthetic identities.

c. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used these synthetic identities to submit applications, *via* the Internet, to the Financial Institutions for credit and debit cards.

d. KHAN and HUSSAIN used victims' social security numbers to submit approximately 1,035 card applications to the Financial Institutions *via* the Internet from their residence at Property 4.

e. KHAN and HUSSAIN used victims' social security numbers to submit approximately 37 card applications to the Financial Institutions *via* the Internet from their business, Chili Express Mart Inc., at Property 2.

f. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators rented apartments in the Western District of New York and used them as drop addresses. The drop addresses included multiple apartments at 95 Fort Hill Terrace, 3240 South Winton Road, 241 Culver Road, and other apartment complexes in and around Rochester, New York.

g. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators listed the drop addresses as the mailing addresses for synthetic cards and thereby caused the Financial Institutions to mail the synthetic cards to those addresses.

h. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators went to the drop addresses to collect the synthetic cards and other mailings from the Financial Institutions related to the synthetic cards.

i. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used synthetic cards to make purchases at retail stores. This included purchases at Apple, BJs, and Sam's Club.

j. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used synthetic cards to make purchases at their own businesses, including Lucky Beverage, Chili Express Mart, and Easy Food Market.

k. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used synthetic cards to pay the property taxes to the City of Rochester for Property 1, Property 2, and Property 3.

l. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators used fraudulent checks to make payments towards the balances of the synthetic cards in order to temporarily increase the synthetic cards' spending limits.

m. The defendants, MIRZA KHAN and TALIB HUSSAIN, and their co-conspirators ultimately did not pay the full balance owed on the synthetic cards, causing losses to the Financial Institutions and damage to the victims' credit ratings.

**All in violation of Title 18, United States Code, Section 1029(a)(2), (b)(2), and (c)(1)(A)(i).**

## COUNTS 3-10
**(Access Device Fraud—Use)**

**The Grand Jury Further Charges That:**

33. The allegations of the Introduction and Counts 1 and 2 are realleged and incorporated herein.

34. On or about the following dates, in the Western District of New York, and elsewhere, the defendants, MIRZA KHAN and TALIB HUSSAIN, knowingly and with intent to defraud, used the following access devices issued to other persons and by such conduct, during a one-year period, obtained the following amounts in excess of $1,000, such use and trafficking affecting interstate and foreign commerce:

| COUNT | DATE | AMOUNT | ACCESS DEVICE |
|---|---|---|---|
| 3 | 8/15/2021 | $ 7,850.59 | Credit Card Ending -3574 |
| 4 | 8/15/2021 | $ 7,203.27 | Credit Card Ending -8100 |
| 5 | 10/11/2021 | $ 4,994.62 | Credit Card Ending -9586 |
| 6 | 4/23/2022 | $ 2,915.10 | Credit Card Ending -4744 |
| 7 | 8/17/2022 | $ 7,831.15 | Credit Card Ending -6393 |
| 8 | 8/17/2022 | $ 8,125.99 | Credit Card Ending -6352 |
| 9 | 9/4/2022 | $ 4,750.00 | Credit Card Ending -5565 |
| 10 | 9/12/2022 | $ 5,774.57 | Credit Card Ending -1169 |

**All in violation of Title 18, United States Code, Sections 1029(a)(2), (c)(1)(A)(i), and 2 and *Pinkerton v. United States*, 328 U.S. 640 (1946).**

## COUNT 11
**(Access Device Fraud – Possession)**

**The Grand Jury Further Charges That:**

35. The allegations of the Introduction and Counts 1 through 10 are realleged and incorporated herein.

36. On or about July 23, 2024, in the Western District of New York, and elsewhere, the defendants, MIRZA KHAN and TALIB HUSSAIN did knowingly and with intent to defraud possess fifteen or more counterfeit and unauthorized access devices, as defined in Title 18, United States Code, Sections 1029(e)(1), (2), and (3), that is, counterfeit and unauthorized credit and debit cards, said possession affecting interstate and foreign commerce in that the counterfeit and unauthorized access devices were applied for using the Internet, mailed across state lines, and used to make purchases and conduct transactions affecting interstate and foreign commerce.

**All in violation of Title 18, United States Code, Sections 1029(a)(3), (c)(1)(A)(i), and 2.**

**<u>COUNTS 12-19</u>**
**(Aggravated Identity Theft)**

**The Grand Jury Further Charges That:**

37. The allegations of the Introduction and Counts 1 through 11 are realleged and incorporated herein.

38. On or about the dates set forth below, in the Western District of New York, and elsewhere, the defendants, MIRZA KHAN and TALIB HUSSAIN, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), that is, a violation of Title 18, United States Code, Section 1349, as alleged in Count 1 of this Indictment, and Title 18, United States Code, Section 1029(a)(2),

as alleged in Counts 2 through 10 of this Indictment, knowing that the means of identification belonged to an actual other person:

| COUNT | DATE | MEANS OF IDENTIFICATION: CREDIT CARD NUMBER | MEANS OF IDENTIFICATION: SOCIAL SECURITY NUMBER |
|---|---|---|---|
| 12 | 8/15/2021 | Ending -3574 | -1165 |
| 13 | 8/15/2021 | Ending -8100 | -1357 |
| 14 | 10/11/2021 | Ending -9586 | -0025 |
| 15 | 4/23/2022 | Ending -4744 | -4970 |
| 16 | 8/17/2022 | Ending -6393 | -2044 |
| 17 | 8/17/2022 | Ending -6352 | -4505 |
| 18 | 9/4/2022 | Ending -5565 | -1248 |
| 19 | 9/12/2022 | Ending -1169 | -8241 |

**All in violation of Title 18, United States Code, Sections 1028A and 2.**

## FORFEITURE ALLEGATION

**The Grand Jury Alleges That:**

39. Upon conviction of Counts 1 through 11 of this Indictment, the defendant, **MIRZA KHAN,** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(2)(A), Title 18, United States Code, Section 982(a)(2)(B), and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

**MONETARY SUM:**

> The sum of two million, two hundred and fifty-seven thousand, six hundred and ninety-seven dollars and seven cents ($2,257,697.07) United States currency, which sum of money is equal to the total amount of proceeds obtained as a result of the offenses for which the defendant, **MIRZA KHAN**, is charged in Counts 1 through 11. In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

40. If any of the property described above, as a result of any act or omission of the defendant:

- i. cannot be located upon the exercise of due diligence;
- ii. has been transferred or sold to, or deposited with, a third person;
- iii. has been placed beyond the jurisdiction of the Court;
- iv. has been substantially diminished in value; or
- v. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) including, but not limited to:

> The approximate sum of three hundred and thirty-five thousand, one hundred and forty-seven dollars ($335,147.00) in United States Currency seized on or July 23, 2024, from 86 Woodleaf, Pittsford, NY.

**All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(A), 982(a)(2)(B), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).**

DATED: Rochester, New York, July 30, 2026.

MICHAEL DiGIACOMO
United States Attorney

BY: *s/Meghan K. McGuire*
MEGHAN K. McGUIRE
Assistant United States Attorney
United States Attorney's Office
Western District of New York
100 State Street
Rochester, New York 14614
(585) 399-3922
Meghan.McGuire@usdoj.gov

A TRUE BILL:

*s/Foreperson*
FOREPERSON